<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

                           :

ERNESTO ORTIZ,             :

                      :   Civil Action No. 10-6767 (NLH)

         Petitioner,  :

                      :

        v.           :   **O P I N I O N**

                      :

D. ZICKEFOOSE,        :

                      :

         Respondent.  :

_____:

**APPEARANCES:**

Ernesto Ortiz, <u>Pro</u> <u>Se</u>
09804-014
Federal Correctional Institution
P.O. Box 2000
Fort Dix, NJ 08640

Mark Christopher Orlowski
Assistant U.S. Attorney
Office of the U.S. Attorney
402 East State Street, Room 430
Trenton, NJ 08608
Attorney for Respondent

**HILLMAN, District Judge**

    Petitioner, Ernesto Ortiz, a federal prisoner currently

confined at the Federal Correctional Institution ("FCI") in Fort

Dix, New Jersey, submitted a petition for a writ of habeas

corpus, pursuant to 28 U.S.C. § 2241,[1] seeking an Order requiring

_____

    [1]  Section 2241 provides in relevant part:

    (a) Writs of habeas corpus may be granted by the
    Supreme Court, any justice thereof, the district courts
    and any circuit judge within their respective
    jurisdictions.

that the Federal Bureau of Prisons ("BOP") grant him "the maximum amount of time in [an] RRC"[2] pursuant to the Second Chance Act of 2007 ("SCA").  (Petition at p. 18).  The named respondent (hereinafter, the "Government") is Donna Zickefoose, the Warden at FCI Fort Dix.  On May 18, 2011, counsel for the Government filed a motion to dismiss the petition on the ground that Petitioner deliberately failed to exhaust the available administrative remedies before commencing this action, in contravention of controlling decisional law.  Petitioner has not responded to the Government's motion.

Because it appears from a review of the submissions that Petitioner did not attempt to exhaust his administrative remedies before filing this petition, the motion to dismiss will be granted, and the petition will be dismissed without prejudice.

## BACKGROUND

**A.    The Second Chance Act**

Residential Re-Entry Center ("RRC") assignments are governed by 18 U.S.C. § 3624(c)(1), which was amended in 2007 by the

---

                                        * * *

(c) The writ of habeas corpus shall not extend to a prisoner unless—... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ....

[2]  "RRC" refers to a Residential Reentry Center, more commonly known as a halfway house.

Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008.

In essence, the Act extended the maximum amount of time that the

Bureau of Prisons ("BOP") may place an inmate in an RRC from 180

days to twelve months.

Regularly referred to as the "Second Chance Act," the

amended statute provides, in pertinent part:

> (1) In General.—The Director of the Bureau of Prisons
> shall, to the extent practicable, ensure that a
> prisoner serving a term of imprisonment spends a
> portion of the final months of that term (not to exceed
> 12 months), under conditions that will afford that
> prisoner a reasonable opportunity to adjust to and
> prepare for the reentry of that prisoner into the
> community. Such conditions may include a community
> correctional facility.

> (2) Home confinement authority.—The authority under
> this subsection may be used to place a prisoner in home
> confinement for the shorter of 10 percent of the term
> of imprisonment of that prisoner or 6 months.

> ...

> (4) No limitations.—Nothing in this subsection shall be
> construed to limit or restrict the authority of the
> Director of the Bureau of Prisons under section 3621.

> ...

> (6) Issuance of regulations. The Director of the Bureau
> of Prisons shall issue regulations pursuant to this
> subsection not later than 90 days after the date of the
> enactment of the Second Chance Act of 2007, which shall
> ensure that placement in a community correctional
> facility by the Bureau of Prisons is-

> > (A)  conducted in a manner consistent with section
> > 3621(b) of this title;

> > (B) determined on an individual basis; and

> > (C)  of sufficient duration to provide the
> > greatest likelihood of successful
> > reintegration into the community.

3

18 U.S.C. § 3624(c).  As noted in the statute, the BOP was

ordered to issue regulations not later than 90 days after the

date of the enactment of the Second Chance Act, to ensure that

placement was conducted consistently with § 3621(b) of the

statute, that the determination was individualized, and that the

duration of placement was sufficient.  Section 3621(b) states:

> (b) Place of imprisonment. The Bureau of Prisons shall
> designate the place of the prisoner's imprisonment. The
> Bureau may designate any available penal or
> correctional facility that meets minimum standards of
> health and habitability established by the Bureau,
> whether maintained by the Federal Government or
> otherwise and whether within or without the judicial
> district in which the person was convicted, that the
> Bureau determines to be appropriate and suitable,
> considering—
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the
> sentence—(A) concerning the purposes for which the
> sentence to imprisonment was determined to be
> warranted; or (B) recommending a type of penal or
> correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the
> Sentencing Commission pursuant to Section 994(a)(2)
> title 28 ...
>
> ... Any order, recommendation, or request by a
> sentencing court that a convicted person serve a term
> of imprisonment in a community corrections facility
> shall have no binding effect on the authority of the
> Bureau under this section to determine or change the
> place of imprisonment.

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers", providing staff guidance for implementing the Second Chance Act.  The memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement 7310.04 concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must be analyzed and supported under the § 3621(b) factors, cited above.  Among other guidelines, the memorandum provided:

> While the Act makes inmates eligible for a maximum of
> 12 months pre-release RRC placements, Bureau experience
> reflects inmates' pre-release RRC needs can usually be
> accommodated by a placement of six months or less.
> Should staff determine an inmate's pre-release RRC
> placement may require greater than six months, the
> Warden must obtain the Regional Director's written
> concurrence before submitting the placement to the
> Community Corrections Manager.

BOP Memo, April 14, 2008, as cited in Strong v. Schultz, 559 F. Supp.2d 556, 562 (D.N.J. 2009).

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating inmates' placement decisions to RRCs or home detention.  See 28 C.F.R. §§ 570.20-570.22.  The regulations do not include the requirement in the April 14, 2008 memo for

5

approval from the Regional Director for pre-release RRC placement

beyond six-months.[3]

## B.   <u>**Factual Background**</u>

Petitioner was sentenced on July 29, 2008, in the United

States District Court for the District of Connecticut, to serve a

48-month prison term for Interfering with Interstate Commerce by

Threats of Violence and Aiding and Abetting, in violation of 18

_____

[3]   Title 28 of the Code of Federal Register, section 570.22
states: "Inmates will be considered for pre-release community
confinement in a manner consistent with 18 U.S.C. section
3621(b), determined on an individual basis, and of sufficient
duration to provide the greatest likelihood of successful
reintegration into the community, within the time-frames set
forth in this part."

The time frames noted are set forth in section 570.21, which
states:

> (a) Community confinement. Inmates may be designated to
> community confinement as a condition of pre-release
> custody and programming during the final months of the
> inmate's term of imprisonment, not to exceed twelve
> months.

> (b) Home detention. Inmates may be designated to home
> detention as a condition of pre-release custody and
> programming during the final months of the inmate's
> term of imprisonment, not to exceed the shorter of ten
> percent of the inmate's term of imprisonment or six
> months.

> (c) Exceeding time-frames. These time-frames may be
> exceeded when separate statutory authority allows
> greater periods of community confinement as a condition
> of pre-release custody.

28 C.F.R. § 570.21.

U.S.C. § 1951.  An inmate at FCI Fort Dix, Petitioner's projected

good conduct release date is March 30, 2012.

On February 25, 2011, Petitioner's Unit Team recommended an

RRC placement of 150-180 days.

Petitioner filed this habeas petition on December 28, 2010,

prior to the Unit Team recommendation.  Petitioner admits in his

petition that he has not filed a request for administrative

remedy before commencing this action because he believes the

administrative remedy process would be futile.  (Pet. at p. 14).

On May 18, 2011, the Government filed a motion to dismiss the

petition based on Petitioner's failure to exhaust his

administrative remedies.  The Government confirms that Petitioner

has not filed any administrative remedy request while in BOP

custody. (Declaration of Tara Moran, ¶ 3).

## DISCUSSION

Although 28 U.S.C. § 2241 contains no statutory exhaustion

requirement, a federal prisoner ordinarily may not bring a

petition for writ of habeas corpus under 28 U.S.C. § 2241,

challenging the execution of his sentence, until he has exhausted

all available administrative remedies.  See, e.g., Callwood v.

Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States

Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v.

Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion

doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a
> factual record and apply its expertise facilitates
> judicial review; (2) permitting agencies to grant the
> relief requested conserves judicial resources; and (3)
> providing agencies the opportunity to correct their own
> errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit. See 974 F. Supp. 817, 819 (M.D. Pa.1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998). The court recognized that exhaustion could be excused where it would be futile. See id. In Snisky, the court found that the BOP

"unequivocally" would deny the petitioner's relief, and he would
return to the district court after the denial.  Thus, the court
addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found
that if the petitioner's claim were meritorious, he would be
released to a halfway house relatively soon; therefore,
dismissing the petition for lack of exhaustion would be futile.
See 990 F. Supp. 367, 370 (D.N.J. 1998) (citing Snisky, 974 F.
Supp. at 819-20).  Further, the court held that the petitioner's
claim was clearly without merit, so that the exhaustion issue
need not be reached.  See id.; see also Fraley v. Bureau of
Prisons, 1 F.3d 924, 925 (9th Cir. 1993) (stating that exhaustion
was not required because it was futile, as Regional Director
would "almost certainly" have denied request, and term of
imprisonment was completed).

In this case, Petitioner admits that he did not exhaust
administrative remedies.  He maintains that he should be excused
from pursuing administrative relief because it would be futile.
In particular, Petitioner asserts that there would be
insufficient time for him to complete the administrative review
process before his hypothetical twelve month RRC placement date.
Further, he contends that the futility doctrine is applicable
here because the BOP has adopted an inflexible placement policy
that violates the SCA.  (Pet., pp. 14-17).

9

The Government argues that Petitioner intentionally bypassed the administrative process, and that regardless of the time frame, exhaustion should not be deemed futile.

Typically, courts have not applied the futility exception based on a timeliness argument.  See Velez v. Zickefoose, 2010 WL 5186158 at *3-4 (D.N.J. Dec. 15, 2010) (the self-serving strategy of bypassing administrative remedies and arguing futility—because there is insufficient time for those remedies to run their course—has never been rewarded by the courts), quoting Shoup v. Schultz, 2009 WL 1544664, *4-5 (D.N.J. June 2, 2009) (the self-described timing calamity, if any, was of the inmate's own making, and such hypothetical self-inflicted distress cannot serve to excuse the exhaustion requirement).  See also Winters v. Warden, FCI Ft. Dix, 2009 WL 2928549, *3 (D.N.J. Sept. 10, 2009); Malvestuto v. Martinez, 2009 WL 2876883, *3 (M.D. Pa. Sept.1, 2009) ("Exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals before the twelve month pre-release mark, which is simply a statutory maximum and not a mandate.").

Likewise, courts have found the futility argument unavailing where the prisoner simply asserts that the BOP has an inflexible placement policy and won't consider twelve month RRC placements. See, e.g., Levon v. Zickefoose, 2010 WL 3025135, *4 (D.N.J. July

30, 2010) (rejecting futility argument based on the inmate's
presumption that his administrative grievance would be denied and
concluding that a full administrative record was necessary for
the Court to determine whether the RRC placement decision had
been made in accordance with the law); Craig v. Zickefoose, 2010
WL 234908, *3-4 (D.N.J. Jan. 15, 2010) (petition dismissed for
failure to exhaust where the inmate alleged that exhaustion
should be excused because he was challenging the BOP policy of
not affording more than six month RRC placements); Brown v.
Grondolsky, 2009 WL 2778437 (D.N.J. Aug. 31, 2009) (dismissing
petition for failure to exhaust where there was no demonstrable
record of such BOP practice); Shoup, 2009 WL 1544664 at *4
("While Petitioner invites this Court to reach an umbrella
conclusion that no exhaustion of administrative remedies is ever
required for any litigant raising a 2241 challenge on the grounds
of the Second Chance Act, this Court disinclines the invitation
and finds that such holding would fly in the face of the Third
Circuit's teachings—as to the firmness of the exhaustion
requirement").

    Therefore, this Court sees no reason to excuse Petitioner's
failure to exhaust administrative remedies.  See Velez, 2010 WL
5186158 at *3 ("the exhaustion requirement is not excused
lightly"); Maddox v. Zickefoose, 2010 WL 2762242, *4 (D.N.J. July
12, 2010); Gardner v. Grondolsky, 2009 WL 5103209, *2-3 (D.N.J.

Dec. 17, 2009). Accordingly, the Court will dismiss the Petition without prejudice to the filing of a new § 2241 petition after Petitioner exhausts administrative relief.

### CONCLUSION

For the foregoing reasons, Respondent's motion to dismiss shall be granted, and the petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, is dismissed without prejudice, for Petitioner's failure to exhaust administrative remedies.

An appropriate Order accompanies this Opinion.

 

 

 

                                        __/s/ Noel L. Hillman____

                                        NOEL L. HILLMAN
                                        United States District Judge

Dated: December 8, 2011

At Camden, New Jersey